The Fourth Amendment violation that happened below is conceded to be a violation, and we have the question of whether the exclusionary rule should have applied or not. What I want to focus the Court's attention on is the nature of the good faith exception to the exclusionary rule. Throughout the Supreme Court's cases, it has been that a police officer's Fourth Amendment violation is excused if he is relying on certain authority. In Leon, it was a judge. In Davis, it was an appellate judge. And so that reliance is different than saying, well, the officer had a good faith belief or was acting reasonably under the circumstances. The government has to point to a particular appellate decision that specifically authorizes the practice that the police officer undertook. Mr. Henderson, this is Judge Rovner. Good morning. Good morning. So you say. All right. When the government cited Flores-Lopez to the District Court on the motion for reconsideration, did Jenkins point out the fact that the case was decided a month after the search of this cell phone? I mean, I saw that you fault the government for leaving the court, but the date of Flores-Lopez is apparent in the face of the decision. It just seems that several people dropped the ball, not just the government. Well, I think that's right. And regrettably, neither the district judge nor Mr. Jenkins himself apparently looked up the decision and looked at the date. I think part of the confusion may have been that this was litigated after Mr. Jenkins' other federal case. And so this was several years after 2012. And I think everybody assumed the search had postdated that decision. But I do fault the government because they introduced this problem. The judge made a ruling excluding the evidence, and the government came back and said, no, you should keep it in because of this case that had no relevance because it postdated the search. It is regrettable that nobody caught it. But the other point that I would make about that particular case, that is the case that is specific appellate binding precedent. There's a reason the government cited that case. That's the sort of specificity that a police officer can rely upon, not the analogous cases like Ortiz or Rob, even the 70s Supreme Court decisions that have nothing to do with cell phones. That's why the government cited that decision. And, of course, they were wrong to do that, and the district court was wrong to accept the government's recommendation on that score. Obviously, the court has heard a similar case in Gary. And I'm aware of the makeup of that panel and this panel, so I won't ask the court to overrule it. But I do think it is distinguishable. A close reading of that case talks about the difference between a search incident to arrest where the search is of the person, the arrestee, rather than a search of something that is located in the vicinity of the arrestee. That's the distinction that the Supreme Court made in Chadwick, distinguishing Robinson and others. And that's the distinction that the court in Gary just last year relied upon to say a cell phone seized from a person when they are arrested could have been justified by those earlier cases because the search of an effect that is located on the person of an arrestee has long been held to be permissible under the Fourth Amendment. This cell phone was recovered in the car. It wasn't on his person. Mr. Jenkins had been removed from the car. It was a messy car. They found these cell phones, and then they took it back to the police station. Were they ringing? The cell phones were ringing, right. And, of course, the remaining evidence included the fact that his car had showed up twice after properly collected phone calls, showed someone setting up drug deliveries. And on that second occasion, his car was pulled over and the drugs were found. That's correct. Of course, it wasn't his car. It was registered to somebody else. And the government does need to show that this would be harmless beyond a reasonable doubt. A large part of the evidence was linking Mr. Jenkins to that cell phone number because a large part of the evidence was these Title III wiretaps between the caraway, the drug dealer, and Mr. Jenkins or his phone. On this issue of harmless error, Mr. Henderson, is the theory that without the cell phone, the defense was going to argue that Caraway had the wrong guy in identifying him as the one on the phone when he's the guy who came after the phone calls? I think that's the defense. I mean, Mr. Caraway was testifying pursuant to cooperation agreements with the government. His credibility would have been subject to question. Right, but there's also a lot of corroboration here with the phone calls, with the surveillance reports, right? Well, right. And the 81 grams of cocaine in the car. Right. Well, and, of course, that wasn't found on his person. It was found in a compartment in the car. So it wasn't, you know, they didn't catch him red-handed, I'd say. But that's why the phone evidence is important because it's corroborating to say, well, we know that this is who he was talking to because this is the number that corresponded to the wiretap that we have. It's an important piece of evidence. There is other corroborating evidence. What I'd suggest is this is not harmless beyond a reasonable doubt. I think there is a reasonable doubt. It sounds to me like the difference between absolutely slamming shut the door and an overwhelming case, frankly. Well, right. A reasonable doubt, I think, is a difficult quantum of evidence to pin down. Let me move to the sentencing issue. Ms. Berry's earlier argument is not quite our argument, but it leads to why this case went to trial in the first place, which is that Mr. Jenkins was charged as a conspirator in a large-scale conspiracy carrying a mandatory minimum sentence of 10 years. Of course, the jury hung on that count, and if they hadn't, if they had convicted, we'd be here on the sufficiency of the evidence challenge. This was not a conspiracy. This is a textbook definition of a buyer-seller relationship. Mr. Jenkins wasn't linked to any other person in this conspiracy or so-called conspiracy. He has no connection to this pipeline of cocaine from Mexico to Texas to St. Louis. He's got a dealer who he goes to and has bought maybe two or three times from small amounts of, you know, cocaine. So when the district court then says, well, this offense is very serious, and when I consider whether to run the sentence consecutively or concurrently with your other sentence, I have to take into consideration the nature of this offense. This is a big conspiracy. You know, when I read the sentencing transcript, it seemed clear that the district court decided to run the sentences consecutively well before he commented on Jenkins' possible participation in the conspiracy. Where, if you can tell us, in the transcript would we find the court drawing a connection between a conspiracy and the need for a consecutive sentence? Well, that particular connection comes when the district court evaluates the 3553A factor of the nature and circumstances of the offense. What the district court says is this is a large conspiracy. It involved quite a large amount of cocaine. Breathtaking is going too far, but at least it's something that's rather stunning. This is on page 25. And then on page 27 and 28, the court connects that and says, what's important to the court in this sentence is that it reflects the seriousness of the offense and the appropriate punishment for being involved in a crime this serious. And then proceeds to say it should be concurrent, consecutive. By virtue of the need to reflect the seriousness of the crime and appropriate punishment, the court believes it should run consecutive. And that's on page 28. It's very clear to me that the court is deciding the concurrent versus consecutive issue on the seriousness of the offense. And the court continuously says the reason this offense is serious is because this is a large-scale cocaine conspiracy, not because this is your standard street-level drug dealing involving relatively small amounts of cocaine. Mr. Henderson, my concern, you've argued in your reply brief that there was no need to raise an objection at the time. But the pre-sentence report identifies Mr. Jenkins as involved in the conspiracy and objections that were made to his relevant conduct, if I recall correctly, were withdrawn in the district court. The only relevant conduct that was ever going to be assessed against him was the relevant conduct pertaining to the uncharged transactions that had occurred before. The conspiracy amounts were never on the table. He's identified as being involved in the conspiracy in the PSR, and he gets 194 grams as relevant conduct, right? Right, but that's solely attributable to him. Those are his deals? Those are his deals. Okay. The other thing is the beginning of the PSR contains what I call boilerplate. When we have these multiple defendant cases, the probation service often lists, these are all the people who were charged in the conspiracy, and these were their roles in the conspiracy. I don't think that that's something that a defense attorney would have to object to, that particular wording, because the rest of the pre-sentence report is only about his possession with the intent to distribute. At the sentencing hearing itself, nobody brings up that this is part of a conspiracy. The government doesn't ask for, for example, 120 months above the guidelines because we think he was involved in the conspiracy. The first time we hear that this decision is going to be based on a conspiracy comes at the imposition of sentence. So for that reason, we don't think that an objection or an exception really is needed. I'll save the rest of the time for rebuttal. Thank you. Thank you, Mr. Henderson. Let's see, Ms. Ruppert. Ms. Ruppert. May it please the court that if this search that took place with respect to Mr. Jenkins took place, the search that took place on January of 2012 took place today, there is no question that suppression would be warranted based upon Riley v. California. But given the state of the law in January of 2012, there was no error here because an officer could reasonably rely on binding precedent to search the appellant's cell phone for its phone number, for its call log, and for its address book or its contact list. And specifically, it's the authority in Robinson v. Ortiz and Arizona v. Gantt that supported the search of Jenkins' cell phone incident to arrest. Robinson obviously having to do with a cigarette package in the person's pocket, that that was a lawful search incident to arrest. In Ortiz, this court in Ortiz held that a pager, an electronic device, that was found on an arrestee which was searched incident to arrest for its number and for its recent calls that were made to the pager. You know, I really am perplexed that the government is now arguing that a cell phone is a container that officers may search and that you're comparing it to a pager. You know, it seems to me a pager might be like an address book,  I mean, is a diary a container that may be searched without a warrant? I think you're taking this much farther than we have ever gone in this area. Your Honor, I believe that United States v. Ortiz in holding that an electronic device such as a pager could be searched for its phone number and for its call log is analogous to what exactly happened here, which is that his cell phone was searched for its phone number and for its call log in addition to an address book. So that while a cell phone might be a different electronic device, it was searched in the context of binding appellate precedent at the time that allowed for a search of a pager for those limited items. Well, it seems to me that your cases seem to support an argument for an extension of the law at that time. I really could not see binding circuit law that would have allowed the officer to believe that no warrant was necessary in this circumstance. And you know something, let me ask you this. I mean, have we ever allowed the Davis exception for good faith reliance on controlling precedent to excuse mistaken efforts to extend controlling precedent? You need to take a good look at Judge Hamilton's concurrence in the Riviera case on this point. I think that is very helpful, and Judge Hamilton's concurrence is very well taken. And I understand that, Judge Rovner. However, I would point the court to an accompanying case heard by this circuit, United States v. Gary, and we submit that the facts are very similar, that in that case it was an arrest of a suspect in 2009 following a traffic stop, that the cell phones in that case were found in the arrestee's pocket, that later that day the detective started pushing buttons and discovered that one of the phones was assigned a number that was relevant to a drug purchase that had been conducted. And this court held that the cell phone search was lawful under binding circuit precedent that allowed the search of personal effects immediately associated with an arrestee, even if the search was not contemporaneous with the arrest, and that the search was conducted with the objectively reasonable good faith belief that it was lawful, and therefore that the evidence should not be excluded. And this court cited in support of that holding, United States v. Robinson, the case I earlier mentioned about the crumpled cigarette package in the arrestee's pocket. Right. In this case, though, we're not dealing with items removed from the defendant's person, not in the course of the arrest. And so I tend to agree with Judge Rovner's implication that this was looking for an extension of Ortiz, particularly given Ortiz's dependence upon the fragility of the evidence at that time in that pager. We don't seem to have that here, do we? I can't say from the record in terms of what the cell phone was or its memory capabilities in terms of this not being an evidence. I looked at my iPhone the other day, and it appears that the call log that I maintain is the last three weeks' worth of phone calls. But we don't have that evidence in the record, so I certainly couldn't speak to that. And that argument obviously would have been available in Riley and was rejected by the Supreme Court. Could I ask you, Counsel, to, on the Fourth Amendment issue, the defense has raised, it seems to me, a pretty important point about the difference between what we might call qualified immunity for civil liability for a police officer and the Davis good-faith exception, which I guess I might characterize. Qualified immunity is available to an officer where there's not a clear prohibition in place. But Davis seems to me to be much narrower, and I'd invite you to comment on that, as requiring quite explicit authorization, as specific in essence as the search warrant in Leon. Well, in United States v. Davis, where the explicit holding was when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply, and that excluding evidence in those cases deters no police misconduct and imposes substantial societal costs. Well, let me put the question this way, then. The question is, how do we want police officers to act in the face of legal uncertainty? Well, I think that police officers should be able to look at the state of the law and be able to act upon holdings of the court. And I do submit that the pager, that the electronic device in that case, did support a search incident to arrest, and that in terms of what Davis talked about in terms of the exclusionary rule and application of the exclusionary rule, that the purpose of applying it depends on the level of culpability of law enforcement, that when the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable, good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrent's rationale loses much of its force and exclusion cannot pay its way. Are you interpreting Davis, then, as equivalent to the standard for qualified immunity? I think that some of that language is there, and that's reflected in Leon, where Leon talks about whether an officer has an objectively reasonable, good-faith belief that their conduct is lawful. Well, in Leon, you have explicit permission from a judge to carry out the search with the warrant. And I'd be very troubled. I don't read Davis as broadly as you do. I'd be very troubled by the notion that the police can conduct warrantless searches unless specifically prohibited. I thought the Fourth Amendment was supposed to push them in the opposite direction. And I understand that, Judge Hamilton. But, again, and I return to the pager, the electronic device, being analogous, that the pager in Ortiz as an electronic device, as this Court considered in Flores-Lopez, it talked about the definition of a container. It spoke of New York v. Belton, that a container could be defined as any object capable of holding another object. And so in defining a container in that manner, that a cell phone that contains a call log or an address book is analogous to a container. And the Court in Flores-Lopez even indicated that viewing a cell phone in that manner was, I believe it was, a fair, literal reading of Robinson. What is the best evidence supporting Gildas? We removed all of the evidence taken from Jenkins' cell phone. Did the government tell the jury that the cell phone records corroborated otherwise shaky testimony? Your Honor, and that speaks to the harmless error. And I do think that if this Court were to find that there was an error in searching the cell phone, that it was certainly harmless. Well, but let me get back to what I'm asking you. Yes, Your Honor. Because without that corroboration, what's your best evidence of guilt to you? I think there was significant corroboration notwithstanding the phone evidence, Your Honor. Specifically, there was surveillance conducted by multiple agents, including Special Agent McKnight and Task Force Officer Drazek, on both January 14th, 2012 and January 28th of 2012. They had intercepted wiretap phone calls on Carraway's phone, indicating that a drug deal was about to take place. They knew that that drug deal was about to take place at the gate, which was Carraway's father's tire shop. They established surveillance, and specifically focusing on January 28th, having seen Carraway and Graham go to the barber shop, then go to a diner, and then sitting on the gate and observing the activities, saw Jenkins' black GMC Yukon enter into the gate, leave shortly thereafter, maintaining consistent surveillance, and that an Illinois State Police trooper, who made independent probable cause to stop the Yukon and search the Yukon, that we find 81 grams of cocaine in a panel. And I think what's notable also, in addition to the fact that we have the surveillance by the agents that was consistently maintained on the 28th, you had the testimony of the cooperators, Carraway and Graham, talking about that transaction on the 28th. And then the traffic stop, where Trooper LeCron, having smelled an odor of marijuana and searched the interior of the vehicle, finding that 81 grams of cocaine, upon showing it to the appellant, he hung his head in resignation, and his statements made at Illinois State Police headquarters include that he was going to quote-unquote, be a man, and he repeated that he was going to be a man. But was there any evidence that would support the district court's conclusion that Jenkins was involved in the larger conspiracy, rather than just being a buyer? And what was the evidence of an agreement? Your Honor, the evidence of the conspiracy included a number of phone calls that were placed during a six-week span from mid-December of 2011 into the beginning of February of 2012, that in those discussions there was evidence of numerous drug transactions to include, at the very least, on the 14th of January, 15th of January, and January 28th. There was the testimony of the cooperator. Involving? I'm sorry? Involving Mr. Jenkins. Involving Mr. Jenkins, yes. And there was the testimony of Tyrone Carraway, that in addition to the phone calls that were being monitored on the wire, he also testified at trial that there would have been numerous face-to-face meetings. That was how he primarily conducted his business. And so the evidence was that over that six-week span that there was, in fact, a conspiratorial relationship between Jenkins and Tyrone Carraway. Of course, the jury did not see it our way and certainly did not come back and convict on that count, which we respectfully respect the jury's decision on that. But that was the evidence in terms of the conspiratorial relationship. You know, the district court found that Gant did not apply to the search of Jenkins' car. So can you still use Gant at this point to get the cell phone in? Your Honor, I think that when looking at the district court's order on the motion to suppress, that the focus, at least the initial part, was the initial search of the car. So after Jenkins is pulled over, he's asked to step out of the vehicle based upon the odor of marijuana. I think that the district court was stating that Arizona v. Gant did not apply to that initial search in terms of a PC search based upon the odor of marijuana. In the proceedings on the motion to suppress with respect to the cell phone, Gant was not specifically raised, but we do believe that it applies in this case, that Gant has a specific holding that if there is reason to believe that evidence is within a vehicle or any containers therein, that it may be properly searched incident to arrest. I do see that the red light is on if there are no further questions. Thank you very much. Rebuttal, Mr. Henderson? Thank you, Your Honor. One thing I would say, again, about Davis is I direct the court's direct attention to United States v. Mann in 2010. The court was making waves about, you know, officers may want to secure warrants for electronic devices. This was not something that was clear cut. In terms of Gant, since we just discussed that, they didn't search the cell phone in the car. Gant has nothing to do with the search of the cell phone. It wasn't office person. It wasn't within his reaching distance, which really is the holding of Gant, so Gant has little to do with this. But as to the conspiracy, I've bought my wife flowers several times from my local grocery store. Every time I go in, I don't conspire with them to purchase flowers, to distribute flowers. I buy them from them because they sell flowers, and so I go and buy them, and then I distribute them or I give them to my wife. That's not a conspiracy. That's a typical buyer-seller relationship. Now, I've gone several times. I've never phoned them ahead of time to make sure there are flowers there, but I could. That doesn't form a conspiracy. I'm going to the person who provides me flowers, and I'm buying it from them. So it was clear error to call this a conspiracy. Unless the court has further questions, I address them in briefs. Thank you. Thank you very much, Mr. Henderson. Thanks to both counsel. The case is taken under advisement.